IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) 2:11-CR-69-NR |
| RICHARD HAYES, | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Richard Hayes has served almost ten years in prison on drug charges. With a little over two years remaining on his sentence, Mr. Hayes now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), citing his heightened risk of illness or death due to COVID-19. After carefully reviewing the parties' submissions, the sentencing transcript, the PSR, and the other materials in the record, the Court will **GRANT** the motion.

At the outset, Mr. Hayes has exhausted his administrative remedies by asking the warden for his release and then waiting 30 days before filing his present motion in court. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Mr. Hayes has also demonstrated extraordinary and compelling reasons for his release. Specifically, he suffers from ailments such as uncontrolled type-2 diabetes (with recent A1C levels at 13.8%), obesity (BMI of 39), and asthma, which place him at a higher risk of suffering serious health

effects from COVID-19.[1] [ECF 93, pp. 5-10]. Further, he is housed in a facility that is presently experiencing a severe COVID-19 outbreak.[2]

Indeed, the government largely concedes this. [ECF 97, pp. 5, 13]. That is, the government agrees that Mr. Hayes has exhausted his remedies by waiting the requisite 30 days. The government also agrees that Mr. Hayes has established extraordinary and compelling reasons for release based on his serious medical conditions. The government, however, opposes compassionate release, arguing that release here would conflict with the Section 3553(a) factors. [*Id.* at pp. 13-16]. The Court disagrees.

---

[1] Mr. Hayes also recently contracted COVID-19. [ECF 97, p. 1]. In some circumstances, a prior diagnosis of COVID-19 might suggest the absence of extraordinary and compelling reasons for release. *See United States v. Patton*, No. 2:19-cr-8, Doc. No. 2293, Memorandum Order (W.D. Pa. Aug. 21, 2020) (Ranjan, J.). But not here. Unlike in *Patton*, for example, where the defendant was asymptomatic and housed in a detention facility with relatively few COVID-19 cases, Mr. Hayes's counsel has represented that Mr. Hayes has suffered, and continues to suffer, from a host of lingering ailments due to his COVID-19 infection. [ECF 101, p. 3]. And further, he otherwise is in poor health and remains in a facility with many cases. *See generally* [ECF 93]. When a prisoner contracts COVID-19, and can point to specific post-illness medical conditions or effects from the virus, as well as a non-speculative risk of re-exposure, an extraordinary and compelling reason for release exists.

[2] Mr. Hayes is housed at FCI-Big Spring, which at the time Mr. Hayes filed his motion, had the highest number of positive COVID-19 cases out of all BOP facilities in the country. [ECF 93, p. 13]. The outbreak at FCI-Big Spring remains disproportionately high today. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 5, 2020). Indeed, Mr. Hayes's counsel represent that 604 of the 929 inmates have contracted COVID-19 there. [ECF 101, p. 2]. This supports a finding of extraordinary and compelling reasons warranting release. *See United States v. Somerville*, 463 F. Supp. 3d 585 (W.D. Pa. 2020) (Ranjan, J.) (finding that the defendant must show not only a serious medical condition, but also "an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held").

Conceptually, the best way of applying the Section 3553(a) factors in the context of a compassionate-release motion is to determine whether the sentence served by the defendant, to date, is sufficient but not greater than necessary to accomplish the sentencing goals. *See, e.g.,* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary[.]"); *United States v. Walls*, No. 2:16-cr-249, 2020 WL 6390597, at *13 (W.D. Pa. Nov. 2, 2020) (Hornak, C.J.) (analyzing the Section 3553(a) factors to determine "whether the period that Mr. Walls has already spent in custody has fulfilled the original purposes of sentencing such that any additional time in custody would now be 'greater than necessary' to fulfill the purposes of sentencing in the context of the overall picture that the record presents").

Here, Mr. Hayes has served approximately 9 years and 8 months in prison, and releasing him now would eliminate the remaining 2 years and 4 months of his sentence. *E.g.*, [ECF 93, p. 2]. Weighing the applicable Section 3553(a) factors in a holistic manner, the Court finds that an "effective" sentence of 9 years and 8 months is sufficient, but not greater than necessary, to further the important statutory goals of sentencing.

Mr. Hayes has a troubled background. His father was largely absent during his adolescent life, his mother was a drug addict (that eventually overdosed) who left Mr. Hayes to fend for himself as an adolescent, and he lived through periods of homelessness when he frequently slept in cardboard boxes. [ECF 72]; [ECF 89, pp. 16-17]. And surrounded by drugs as a child, he became a regular drug user at age 13. [ECF 72]. In the early 2000s, as a young man (between the ages of 20 and 23), Mr. Hayes committed four drug offenses, though none involved acts of violence or possession of firearms. [*Id.*]. And those offenses involved small quantities of drugs and money—all committed to

feed Mr. Hayes's drug addiction and to provide him money to survive. *E.g.*, [ECF 89, pp. 13, 17].

Many years passed between those earlier drug offenses and the federal drug offense for which he is now sentenced and incarcerated. Concerning the latter, in 2013, Mr. Hayes pled guilty to possessing with the intent to distribute a large quantity of cocaine (4 kilograms). [ECF 70]; [ECF 97, p. 2]. This crime is obviously serious. But by virtue of his prior drug offenses committed 7-10 years before, Mr. Hayes was considered a career offender, which increased his guidelines range and the "starting point" for sentencing. [ECF 89, pp. 25, 28].

Like his prior offenses, the instant offense didn't involve any weapons or acts of violence, and appeared to be a lapse in judgment (albeit, a serious one). Since then, Mr. Hayes has made extensive efforts to rehabilitate himself by participating in BOP programming, including courses in health, business, and philosophy. [ECF 93, pp. 17-18; ECF 93-6]. He has taken numerous courses to aid his personal development and rehabilitation such as Decision Making, From Prison to Paycheck, Parenting, and Basic Life Skills. [*Id.*]. Additionally, he has completed courses to better himself professionally such as Welding, Informational Job Fair, and Entrepreneur 101. [*Id.*]. He also completed the Commercial Driver's License course and hopes to use the knowledge learned to obtain his CDL upon release. [*Id.*].[3]

---

[3] The government points out that Mr. Hayes was disciplined twice in 2017 for prison infractions. [ECF 97, p. 15]; [ECF 97-4]; [ECF 97-5]. One was for possessing a cell phone in a landscaping shed, which the Court doesn't find to tip the balance. The other incident was for standing watch in front of a cell while one inmate assaulted another inmate. Though the Court has concerns regarding this incident, the supporting documents do not shed sufficient light on Mr. Hayes's participation or the assault itself. It also appears from the documents that Mr. Hayes claimed he "didn't know what was happening." [ECF 97-5, p. 9]. All told, after considering these two infractions (committed

In short, weighing the applicable 3553(a) factors here, on one side of the balance is the serious offense involving a large quantity of drugs for which Mr. Hayes has served about ten years in prison (and faces five years of supervised release after imprisonment, [ECF 81]). On the other side of the balance is a host of mitigating factors that revolve around Mr. Hayes's troubled childhood and addiction issues, and his seeming rehabilitation over the past 9 years.

Considering all of this within the framework of 18 U.S.C. § 3553(a), the Court finds that a 9-year and 8-month sentence—*i.e.*, time served—is sufficient but not greater than necessary to further the goals of sentencing. Immediate compassionate release is fully consistent with the Section 3553(a) factors.

For these reasons, Mr. Hayes's motion is granted. The Court will convert the remainder of Mr. Hayes's sentence to a sentence of time served, with the originally imposed term of supervised release to commence immediately. The Court will, however, also impose one additional condition. Because of Mr. Hayes's prior substance-abuse issues, lengthy prison sentence, and background, the Court will require that the first four months of Mr. Hayes's supervised-release term be served in a residential reentry center or equivalent facility selected at the discretion of the Probation Officer.

---

over three years ago), the Court does not find that they indicate a lack of rehabilitation or any recidivist tendencies, at least to the extent they do not materially alter the Court's application of the Section 3553(a) factors here.

- 5 -

## ORDER

**AND NOW,** this **5th day of November, 2020,** upon consideration of Mr. Hayes's motion for compassionate release [ECF 93], it is **HEREBY ORDERED** that the motion is **GRANTED** as follows:

1.     Mr. Hayes's remaining prison sentence is converted to a sentence of time served, to be followed by the originally-imposed term of supervised release, except that, as set forth below, Mr. Hayes shall remain in custody until (1) he has completed a 14-day quarantine period; and (2) the Probation Office has finalized arrangements for placement in a residential reentry center.

2.     In anticipation of his release, the Court **ORDERS** that the government, the Bureau of Prisons, and the Probation Office take all steps necessary to immediately place Mr. Hayes in quarantine at his current facility, or any other appropriate location selected by the BOP, for a period of 14 days. During the quarantine period, the BOP may conduct any necessary medical clearance and fulfill any obligations under relevant statutes.

3.     Upon release, Mr. Hayes shall commence his term of supervised release. Mr. Hayes shall be subject to the same supervised-release conditions imposed at sentencing, except that those conditions shall be modified to add the special condition that Mr. Hayes be immediately placed in a residential reentry center to begin his supervised release term, for a period of **120 days**, as directed by the Probation Office. Mr. Hayes shall observe the rules, regulations, and directives of the designated community corrections facility. A subsistence fee waiver is requested as the modification is for housing purposes only. Mr. Hayes shall remain in custody until the Probation Office can finalize arrangements for placement at the residential reentry center. Upon securing

an approved residence, the Probation Office will release Mr. Hayes to the program.

4. The Court **ORDERS** the Probation Office to begin the process of placing Mr. Hayes in an appropriate residential reentry facility immediately, and to advise the parties and the Court if placement is expected to significantly delay Mr. Hayes's release.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge